**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                        No. 96-4488

TERRY FENNER,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                        No. 96-4489

HERBERT FENNER,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CR-95-95-MJG)

Argued: April 10, 1998

Decided: July 21, 1998

Before WILKINS and NIEMEYER, Circuit Judges, and
CHAMBERS, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Wilkins wrote the opinion, in
which Judge Niemeyer and Judge Chambers joined.

_____

**COUNSEL**

**ARGUED:** Beth Mina Farber, Chief Assistant Federal Public Defender, Baltimore, Maryland; Harry D. McKnett, Columbia, Maryland, for Appellants. Jamie M. Bennett, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** James K. Bredar, Federal Public Defender, Baltimore, Maryland, for Appellants. Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

_____

**OPINION**

WILKINS, Circuit Judge:

Terry Fenner and Herbert Fenner appeal their various drug and firearm convictions and resulting sentences. They principally argue that the district court erred in concluding that it was not authorized to depart downward from their applicable guideline ranges based on its concern that a literal application of the cross reference in U.S. Sentencing Guidelines Manual § 2K2.1(c)(1)(B) (1995) resulted in a sentence that was violative of due process. Finding that the district court did not err in determining that it lacked authority to depart based on the application of the § 2K2.1(c)(1)(B) cross reference, and concluding that the Fenners' remaining allegations of error lack merit, we affirm the Fenners' convictions and sentences.

I.

Robert Holley recruited Terry Fenner into a Baltimore, Maryland heroin and cocaine distribution conspiracy. Terry's primary responsibility was to oversee other members of the conspiracy and to prevent robberies by rival gang members. Holley, however, ultimately ousted Terry following a heated argument that occurred when Holley became convinced that Terry had embezzled drug proceeds. Two days after this dispute, Holley was murdered on the street outside his home. Eyewitnesses to the murder indicated that two men with firearms, whom they identified as brothers Terry and Herbert Fenner, had approached Holley as he was attempting to hail a taxi and shot him as he fled from them.

The Fenners were charged with Holley's murder in state court and acquitted. Thereafter, they were prosecuted on federal charges. Terry was found guilty of conspiring to distribute cocaine and heroin, see 21 U.S.C.A. § 846 (West Supp. 1998); using or carrying a firearm during and in relation to a crime of violence, see 18 U.S.C.A. § 924(c)(1) (West Supp. 1998); and being a felon in possession of a firearm, see 18 U.S.C.A. § 922(g)(1) (West Supp. 1998). Herbert was convicted of two counts of being a felon in possession of a firearm, see 18 U.S.C.A. § 922(g)(1), and possessing an unregistered sawed-off shotgun, see 26 U.S.C.A. § 5861(d) (West 1989). The jury was unable to reach a verdict with respect to a separate charge against the Fenners of using or carrying a firearm during and in relation to a drug trafficking offense, see 18 U.S.C.A. § 924(c)(1), a charge that related to the weapons they used in connection with Holley's murder. The district court ultimately entered a judgment of acquittal on that charge, ruling that because Terry had been expelled from the drug distribution conspiracy prior to Holley's murder, the evidence was insufficient to support a determination that they possessed the weapons "during and in relation to" a drug trafficking offense. 18 U.S.C.A. § 924(c)(1).

At sentencing, the district court found that the Fenners were responsible for Holley's murder and applied the cross reference to the homicide guidelines contained in U.S.S.G. § 2K2.1(c)(1)(B). The district court determined Terry's base offense level by employing the first-degree murder guideline. See U.S.S.G.§ 2A1.1. And, Terry's offense level of 43, combined with his Criminal History Category of VI, resulted in a guideline sentence of 55 years imprisonment--the statutory maximum penalty available by imposing consecutive sentences for the three offenses of conviction. See U.S.S.G. §§ 5G1.1(a), 5G1.2(d); see also 18 U.S.C.A. § 924(a)(2) (West Supp. 1998) (providing a maximum penalty of ten years imprisonment for a violation of § 922(g)); 18 U.S.C.A. § 924(c)(1) (providing a five-year mandatory consecutive sentence for using or carrying a firearm during and in relation to a drug trafficking offense); 21 U.S.C.A. § 841(b)(1)(B) (West Supp. 1998) (providing a maximum penalty of 40 years imprisonment for a violation of § 846 involving "100 grams or more of a mixture or substance containing a detectable amount of heroin"). The district court determined Herbert's base offense level by

3

applying the second-degree murder guideline. <u>See</u> U.S.S.G. § 2A1.2.**1** Herbert's base offense level of 33, combined with his Criminal History Category of V, resulted in a guideline range of 210-262 months imprisonment. Although the district court expressed concern that the application of the cross reference resulted in a rather large enhancement of the Fenners' guideline ranges--without the use of the cross reference Terry's guideline range would have been 442-507 months imprisonment and Herbert's guideline range would have been 92-115 months imprisonment--it refused to depart downward, ruling that it lacked the authority to do so. The district court sentenced Terry and Herbert respectively to 55 years and 210 months imprisonment.

II.

The Fenners principally argue that because the district court erroneously believed that it lacked the authority to depart downward, the sentences imposed upon them must be vacated to permit the district court to determine whether to depart. In support of their argument, the Fenners explain that the district court ruled prior to the decision of the Supreme Court in <u>Koon v. United States</u>, 518 U.S. 81 (1996), and that <u>Koon</u> makes clear that only in those narrow circumstances in which the guidelines forbid a district court to depart on a specified basis does a district court lack the authority to do so. <u>See id.</u> at 93-94, 106-07. Because, the Fenners continue, the enhancement of their guideline ranges produced through application of the § 2K2.1(c)(1)(B) cross reference is not a factor expressly forbidden for departure by the guidelines, the district court must possess the authority to depart on that basis. Consequently, they maintain, a remand is required to permit the district court to exercise its authority to do so.

The Fenners are correct that <u>Koon</u> holds that a district court is categorically forbidden to depart only on those bases expressly foreclosed by the guidelines themselves. Nevertheless, the <u>Koon</u> Court recognized that decisions to depart grounded upon other bases would be reviewed for an abuse of discretion. <u>See id.</u> at 96-100. Accordingly, we need not remand to permit the district court to exercise its discretion to depart if its decision to do so on remand would constitute an

_____

**1** The district court applied the second-degree murder guideline to Herbert because the court found that he did not intend to kill Holley.

abuse of discretion. Hence, we turn to analyze whether the basis artic-ulated by the district court--the enhancement to the Fenners' guide-line ranges resulting from application of the § 2K2.1(c)(1)(B) cross reference--constitutes an appropriate basis for departure.

A.

Congress has instructed that a district court must impose a sentence within the range that results from the proper application of the guide-lines "unless the court finds that there exists an aggravating or miti-gating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C.A. § 3553(b) (West Supp. 1998). In order to ascertain whether a factor under consideration is an appropriate basis for departure, a sentencing court should determine whether the factor was forbidden, encouraged, discouraged, or unmentioned by the Commission as a basis for departure. See Koon , 518 U.S. at 93-96; United States v. Barber, 119 F.3d 276, 279-80 (4th Cir.) (en banc), cert. denied, 118 S. Ct. 457 (1997). This determination is made by reference to the guidelines, policy statements, and commentary. See Koon, 518 U.S. at 92-93. Whether and under what circumstances a sentencing court properly may depart on the basis of any given factor is measured in large part by the category into which the factor falls. See id. at 94-96.

If a factor is one upon which the Commission has neither forbid-den, encouraged, nor discouraged departure in the guidelines, policy statements, or commentary, the circumstance is considered to be an unmentioned factor. See id. at 96; United States v. Brock, 108 F.3d 31, 35 (4th Cir. 1997). Although the Commission recognized the pos-sibility of departures based on factors not mentioned in the guidelines, it anticipated that such departures would be "highly infrequent" "be-cause the guidelines, offense by offense, seek to take account of those factors that the Commission's data indicate[d] made a significant dif-ference in pre-guidelines sentencing practice." U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b). Thus, the Commission envisioned that depar-tures principally would be reserved for those "rare" situations in which an important factor occurs in connection with a crime in which it typically occurs only infrequently. Id. Consequently, departure on

5

the basis of an unmentioned factor is permissible only when that circumstance takes the case outside the heartland of situations addressed by the applicable guideline. See Koon, 518 U.S. at 96.**2**

Here, the enhancement resulting from an application of the § 2K2.1(c)(1)(B) cross reference has not been identified by the Commission in the guidelines, policy statements, or commentary as a forbidden, encouraged, or discouraged basis for departure. Application of the cross reference cannot be considered a forbidden factor because it is not listed by the Commission as one "that never can be" a basis for departure. Id. at 93; see id. at 106-07. Similarly, the enhancement resulting from application of the § 2K2.1(c)(1)(B) cross reference is not an encouraged or discouraged factor because the appropriateness of the enhancement resulting from application of the cross reference as a basis for departure is not expressly addressed in the guidelines, policy statements, or commentary. See id. at 94-95 (discussing factors that the Commission has identified as encouraged and discouraged factors). Because the enhancement resulting from application of the § 2K2.1(c)(1)(B) cross reference is a factor that has been neither forbidden, encouraged, nor discouraged as a basis for departure by the Commission, it must be considered an unmentioned factor.

To determine whether departure based on an unmentioned factor is appropriate, a "court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether [the factor] is sufficient to take the case out of the Guideline's heartland." Id. (citation & internal quotation marks

_____

**2** It is essential to recognize that "`[t]he Commission intend[ed] the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes'" and to consider as potential bases for departure factors that take the case outside the heartland of the applicable guideline. Koon, 518 U.S. at 93 (quoting U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b)). Thus, the Commission has indicated that it adequately considered circumstances within the heartland of conduct encompassed by the guidelines and did not consider conduct falling outside the heartland. Accordingly, the crucial inquiry is whether the individual facts that the district court is considering are taken into account in the heartland of situations encompassed within the applicable guideline.

omitted). Accordingly, it must be determined whether the enhancement resulting from application of the cross reference is taken into account within the heartland of the applicable guidelines.

Section 2K2.1 was written by the Commission to address the heartland of a wide variety of firearm possession and transportation offenses. See U.S.S.G. § 2K2.1. A cross reference contained in § 2K2.1(c)(1) provides that "[i]f the defendant used or possessed any firearm ... in connection with the commission ... of another offense, ... apply ... (B) if death resulted, the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide), if the resulting offense level is greater than that determined above." The language of the cross reference plainly indicates that when a firearm is illegally possessed in connection with another offense in which death results, the sentencing court must enhance the defendant's sentence in accordance with the homicide guidelines if that sentence is greater than that calculated without reference to the homicide guidelines. Thus, there can be no doubt that the guidelines take into account that the application of the § 2K2.1(c)(1)(B) cross reference will result in an enhanced guideline range.

B.

The Fenners contend, however, that even if the application of the § 2K2.1(c)(1)(B) cross reference does not constitute a basis for downward departure because that factor is taken into consideration in the guidelines, the present facts nevertheless present a factor warranting departure that is not accounted for in the guidelines. The Fenners maintain that the enhancement to their guideline range is so large that it may not be imposed on the basis of conduct of which they have been acquitted twice without a violation of their rights to due process. Thus, they contend, the district court must have been authorized to depart downward in order to cure the due process violation that would result if a sentence were imposed within the guideline range resulting from an application of the § 2K2.1(c)(1)(B) cross reference.

The constitutional guarantee of due process protects a criminal defendant "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Generally, the

7

determination by the legislature of the elements of the offense is conclusive in assessing what facts the prosecution must prove in order to convict. See McMillan v. Pennsylvania, 477 U.S. 79, 85 (1986). As a corollary, factors that bear only upon the sentence to be imposed, and are not elements of the offense, typically need not be proven beyond a reasonable doubt by the prosecution and may be determined by the sentencing court based on a preponderance of the evidence. However, the due process guarantees of the Constitution do impose some constraints upon how far this general proposition may be taken. See id. at 86; Patterson v. New York, 432 U.S. 197, 210 (1977); see also Almendarez-Torres v. United States, 118 S. Ct. 1219, 1230 (1998).

For example, in Mullaney v. Wilbur, 421 U.S. 684, 704 (1975), the Supreme Court held unconstitutional a provision governing the sentence imposed for felonious homicide. Under Maine law, "[a]bsent justification or excuse, all intentional or criminally reckless killings [were] felonious homicides," which were punishable by life imprisonment. Id. at 691. However, if a defendant proved by a preponderance of the evidence that he acted in the heat of passion on sudden provocation, he would be sentenced to a minimum of a nominal fine and a maximum of 20 years imprisonment. See id. at 691-92. Although Maine defined the crime of felonious homicide without reference to the presence or absence of heat of passion on sudden provocation and treated the existence of this factor as one mitigating sentencing, the Supreme Court held "that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of heat of passion on sudden provocation when the issue is properly presented in a homicide case." Id. at 704. The Court explained that in some instances due process requires the prosecution to shoulder the burden of proving facts bearing on the degree of criminal culpability beyond those facts necessary for conviction. The Court stated that in determining when this was so "an analysis that looks to the operation and effect of the law as applied and enforced by the[government] and to the interests of both the [government] and the defendant as affected by the allocation of the burden of proof" is required. Id. at 699 (citation & internal quotation marks omitted).

In contrast, in McMillan, the Court upheld against a due process challenge a Pennsylvania law providing for a five-year mandatory

8

minimum sentence when a defendant who was convicted of specified crimes visibly possessed a firearm during the commission of the offense. See McMillan, 477 U.S. at 86. The Court pointed to several factors supporting a conclusion that the Pennsylvania law did not transgress the constitutional line. See id. at 86-88. First, the Pennsylvania law did not violate "the limits expressly set out in Patterson"-- i.e., that "[i]t is not within a province of a legislature to declare an individual guilty or presumptively guilty of a crime" or to "command that the finding of an indictment, or mere proof of the identity of the accused, should create a presumption of the existence of all the facts essential to guilt." Id. at 86-87 (internal quotation marks omitted). Second, the possible exposure in punishment confronted by a defendant subject to the Pennsylvania law did not range from a modest fine to life imprisonment. See id. at 87. Third, the Pennsylvania law adjusted only the mandatory minimum penalty and not the maximum penalty available and therefore merely limited the discretion normally afforded to the sentencing court in selecting an appropriate penalty within an established range. See id. at 87-88. Fourth, the Pennsylvania law did not create a new offense with a distinct penalty. See id. at 88. And, finally, the Pennsylvania law gave "no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense." Id. Rather, the law merely prescribed the specific weight to be accorded the finding that the defendant visibly possessed a firearm. See id. at 89-90; see also Almendarez-Torres, 118 S. Ct. at 1230.

Thus, it can be said that sometimes the prosecution must bear the burden of proving beyond a reasonable doubt facts bearing upon sentencing even though such facts do not establish an element of the offense. The precise due process limitations on the allocation or standard of proof for facts that bear on the degree of criminal culpability but that are not defined by law as an element of the offense have not been clarified, however. See McMillan, 477 U.S. at 86. Nevertheless, we find guidance in the previous decisions of the Court.

Here, as explained above, the sentencing guidelines provide that in determining the appropriate sentence for specified firearms offenses governed by U.S.S.G. § 2K2.1, the court should impose a sentence commensurate with that dictated by the most analogous homicide guideline if the firearm was used or possessed in connection with

9

another offense in which death resulted and if the sentence so calculated is greater than that indicated by reference to the firearms guideline. See U.S.S.G. § 2K2.1(c)(1)(B). The § 2K2.1(c)(1)(B) cross reference "does not transgress the limits expressly set out in Patterson." McMillan, 477 U.S. at 86. First, it does not create any presumption that the firearm offense of which the defendant was convicted involved death. See id. at 87. Further, the possible exposure to punishment confronted by the Fenners under the § 2K2.1(c)(1)(B) cross reference does not range from a modest fine to life imprisonment. See id. Instead, Terry was subject to an increase from 42 years imprisonment to 55 years imprisonment, and Herbert was subject to an increase from 115 months imprisonment to 210 months imprisonment. We cannot say that this increase is so profound that it is sufficient to implicate due process concerns or to give the "impression of having been tailored to permit" the application of the cross reference "to be a tail which wags the dog of the substantive offense." Id. at 88. Additionally, the § 2K2.1(c)(1)(B) cross reference does not create a new offense or increase the statutory maximum penalty to which the Fenners were exposed, but merely limits the discretion of the district court in selecting an appropriate sentence within the statutorily defined range. See id. at 87-88. All of these factors point in favor of a conclusion that the application of the § 2K2.1(c)(1)(B) cross reference did not constitute a violation of the Fenners' right to due process.

In support of their position, the Fenners point to United States v. Lombard, 72 F.3d 170 (1st Cir. 1995), in which the court held that a district court had erred in ruling that it lacked authority to depart downward from the guideline range that resulted from an application of the § 2K2.1(c)(1)(B) cross reference when the extent of the enhancement to the guideline range was so great that it resulted in a violation of due process. The court reasoned that"[t]he Supreme Court decisions on sentencing, while generally endorsing rules that permit sentence enhancements to be based on conduct not proved to the same degree required to support a conviction, have ... cautioned against permitting a sentence enhancement to be the`tail which wags the dog of the substantive offense.'" Id. at 176 (quoting McMillan, 477 U.S. at 88). The Lombard court determined that the application of the § 2K2.1(c)(1)(B) cross reference to augment the defendant's guideline range from 262-327 months imprisonment to a mandatory

10

life sentence so increased the punishment in degree and kind that the enhancement wagged the dog of the firearms offense. See id. at 177.

Lombard, however, presents a different situation than that presented here, and we need not resolve the issue presented in Lombard to conclude that the Fenners faced no due process violation in the application of the § 2K2.1(c)(1)(B) cross reference. Because the statutory maximum term of imprisonment to which the Fenners were subjected was far less than the sentence of life imprisonment to which Lombard was exposed, the application of the § 2K2.1(c)(1)(B) cross reference did not implicate an increase in criminal culpability in kind or degree similar to the enhancement at issue in Lombard, which the court there found dispositive. Consequently, we do not find Lombard to be persuasive.

III.

In sum, we reject the Fenners' argument that the application of the § 2K2.1(c)(1)(B) cross reference violated their right to due process and hence that the district court must have been authorized to depart downward from the resulting guideline range on that basis.**3** Because the Fenners have failed to identify any basis that the district court properly could employ to depart downward from their guideline ranges, we find no need to remand to the district court for further consideration of their sentences. Accordingly, we affirm the Fenners' convictions and sentences.**4**

AFFIRMED

_____

**3** The Fenners raised no argument concerning the standard of proof that must be satisfied in order to impose the enhancement resulting from the § 2K2.1(c)(1)(B) cross reference consistent with due process. This omission is no doubt the result of the district court finding beyond a reasonable doubt that the Fenners were responsible for Holley's death. Because no question concerning the standard of proof is before the court, we express no view on this issue. See Almendarez-Torres, 118 S. Ct. at 1233.

**4** We have carefully considered the other arguments raised by the Fenners relating to their convictions and sentences and find them to be without merit.

11