**UNITED STATES of America**

v.

**Thomas Reed MULLINS, Defendant.**

**No. 2:04CR10066.**

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Feb. 16, 2005.

---

Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States.

Gerald L. Gray, Gerald Gray Law Firm, Clintwood, Virginia, for Defendant.

## OPINION SETTING FORTH REASONS FOR SENTENCE

JONES, Chief Judge.

For the reasons set forth in this opinion, I find it reasonable to sentence the defendant below the advisory sentencing guideline range.

Defendant Thomas Reed Mullins pleaded guilty to Count One of an indictment charging the distribution of a Schedule II controlled substance within 1,000 feet of a school, in violation of 21 U.S.C.A. §§ 841(a)(1) and 860 (West 1999). In addition, he pleaded guilty to a two-count information charging him with possessing a semiautomatic assault rife, in violation of 18 U.S.C.A. § 922(v) (West 2000 & Supp. 2004), and selling a firearm as a licensed firearms dealer without noting in his records the name, age, and place of residence of the buyer, in violation of 18 U.S.C.A. § 922(b)(5) (West 2000 & Supp.2004). According to the facts set forth in the Presentence Investigative Report ("PSR"), Mullins operated a pawn shop for a number of years in the small town of Clintwood, Virginia, across the street from Clintwood High School. Mullins was a licensed federal firearms dealer with no prior criminal record. On March 30, 2004, Mullins sold a .22 caliber revolver to a confidential informant without the necessary documentation. On May 3, 2004, the same confidential informant purchased a ten-milligram methadone tablet from Mullins. On August 11, 2004, agents of the federal Bureau of Alcohol, Tobacco, Firearms and Explosives executed a search warrant at Mullins' home and seized a large number of firearms, including a XM–15 semiautomatic assault rifle. According to the testimony of an agent at the sentencing hearing, Mullins admitted that he had converted the rifle approximately two years previously by adding a telescoping stock and a bayonet lug. These additions made the firearm a prohibited semiautomatic assault rifle.[1]

In the plea agreement with Mullins, the government promised to dismiss other

---

1. A semiautomatic assault rifle is a semiauto-     matic rifle that has the ability to accept a

counts of the indictment charging him with improper firearm sales and drug distributions on other dates. The parties stipulated that sections 2K2.1(b)(1)(C) and (b)(5) of the United States Sentencing Guidelines ("USSG") were applicable.[2]

The probation officer, utilizing the 2004 version of the Sentencing Guidelines Manual, grouped the counts of conviction in order to calculate the applicable guideline range. Pursuant to USSG § 3D1.3(a), the highest offense level of the counts in the group is used. The highest offense level in the group was 18, for the possession of a semiautomatic assault rifle. USSG § 2K2.1(a)(5). Adding the two stipulated increases produced an adjusted offense level of 28. The adjustment for acceptance of responsibility reduced the total offense level to 25. Because he had no criminal history points, Mullins had a guideline custody range of 57 to 71 months imprisonment.

Prior to Mullins' sentencing, the Supreme Court decided *United States v. Booker,* ── U.S. ──, 125 S.Ct. 738, ── L.Ed.2d ── (2005), in which it held that the Sentencing Guidelines violated a defendant's Sixth Amendment right to a jury trial. *Id.* at 745. The Court also held that the constitutional infirmity could be remedied by voiding the statutory requirement that the guidelines are mandatory. *Id.* at 764.[3] As a result, the guidelines are now advisory, although the sentencing court must "consult those Guidelines and take them into account," along with the sentencing goals set forth in 18 U.S.C.A. § 3553(a) (West 2000 & Supp.2004). *Id.* at 767.

The first step for a federal sentencing court after *Booker* is to "determine the range prescribed by the guidelines after making such findings of fact as are necessary." *United States v. Hughes,* 396 F.3d 374, 381 (4th Cir.2005). In the present case, there are no factual disputes implicating the guidelines. Neither the government nor the defendant has objected to the PSR or to its calculation of the applicable guideline range.

▮ The defendant has filed a Motion for Downward Departure on the basis that possession of a semiautomatic assault rifle is no longer a crime. The Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103–322, § 110102, 108 Stat. 1796, 1996 (1994) (codified at 18 U.S.C.A. § 922(v)(1)), made the manufacture, transfer, or possession of such firearms a crime. This prohibition contained a ten-year sunset provision, *id.* § 110106, 108 Stat. at 2000, and Congress did not renew the law.[4] Thus, after September 13, 2004 (approximately one month after the date charged in the information) the defendant's possession of a semiautomatic assault weapon would not have been a crime. While at common law, the repeal of a criminal statute after the criminal act barred future prosecution, the general saving statute changes this rule and treats the criminal

---

detachable magazine and has at least two of certain listed characteristics, which listed characteristics include a telescoping stock and a bayonet mount. *See* 18 U.S.C.A. § 921(a)(30)(B) (West 2000)

**2.** USSG § 2K2.1(b)(1)(C) provides for an increase of six levels if the offense involved 25 to 99 firearms. USSG § 2K2.1(b)(5) provides for an increase of four levels if the defendant used or possessed the firearm in connection with another felony offense. According to the PSR, Mullins told the confidential informant that he would not sell a controlled substance without also selling an undocumented firearm at the same time.

**3.** The Court also voided the existing standard for appellate review of sentences. *Id.*

**4.** *See* Karen MacPherson, *10–Year Assault Weapons Ban Ends; Congress Ducks Vote, Fearing NRA,* Pittsburgh Post–Gazette, Sept. 13, 2004, *available at* 2004 WL 84812066.

statute "as still remaining in force." 1 U.S.C.A. § 109 (West 1997); *see Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 660, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974) (discussing history of general saving statute).

■ Under the Sentencing Guidelines, only in an extraordinary case may a sentencing court depart from the designated range to impose a sentence that is either shorter or longer than that prescribed by the guidelines. Congress allowed a court to use its discretion to depart only when it found "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C.A. § 3553(b)(1) (West Supp.2004); *see Koon v. United States*, 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The guidelines contemplate that certain circumstances will be either "forbidden, encouraged, discouraged, or unmentioned by the Commission as a basis for departure." *United States v. Fenner*, 147 F.3d 360, 363 (4th Cir.1998). A court may consider an unmentioned factor as a basis for departure if the characteristics or circumstances distinguish the case from the heartland cases covered by the guidelines in such a way that departure is warranted. *See Koon*, 518 U.S. at 96, 116 S.Ct. 2035. Such departures should be granted infrequently and are reserved for the rare situation. *See Fenner*, 147 F.3d at 364. To determine whether an unmentioned factor is appropriate for a departure, a " 'court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether [the factor] is sufficient to take the case out of the Guideline's heartland.' " *Id.* (quoting *Koon*, 518 U.S. at 94–95, 116 S.Ct. 2035).

The ground for the requested downward departure here is unmentioned in the Sentencing Guidelines,[5] and thus under pre-*Booker* procedure, I would determine whether the fact that the conduct used to compute the guideline range is no longer criminal is sufficient to justify a departure. Whether consideration of guideline-authorized departures in the post-*Booker* world is necessary is a question that remains to be answered.[6] I need not decide that issue, however, since I find that in any event, a variance below the applicable guideline range is called for in this case.

There has been yet no authoritative formulation following *Booker* as to the weight to be given to the formerly mandatory sentencing guidelines. *Compare United States v. Wilson*, 350 F.Supp.2d 910, 911 (D.Utah 2005) (holding that guidelines should be varied from only "in unusual cases for clearly identified and persuasive reasons") *with United States v. Ranum*, 353 F.Supp.2d 984, 985 (E.D.Wis. 2005) (holding that guidelines should be treated as merely one factor to be considered in determining reasonable sentence). Regardless of the precise weight to be given

---

**5.** The Sentencing Guidelines do recognize a "lesser harms" ground of departure, in which the conduct "may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue." USSG § 5K2.11. However, at the time Mullins possessed the semiautomatic assault rifle, his conduct did cause the harm sought to be prevented by the law later repealed. In other words, there is no evidence he possessed the rifle for some purpose that was not unlawful at the time. *See United States v. Bayne*, 103 Fed.Appx. 710, 712 (4th Cir.2004) (unpublished) (holding that sentencing court did not err in applying lesser harms departure to possessor of sawed-off shotgun who received the firearm from a friend and put it away).

**6.** For a discussion of why the "old departure methodology" should still be followed, post-*Booker*, see *United States v. Wilson*, 355

to the Sentencing Guidelines, however, I find that evaluation of the statutory sentencing goals justifies a sentence below that of the guidelines.

The applicable sentencing statute left untouched by *Booker* requires a sentencing court to impose a sentence not greater than necessary to comply with certain listed sentencing purposes, including "afford[ing] adequate deterrence to criminal conduct." 18 U.S.C.A. § 3553(a)(2)(B). In the present case, neither the defendant nor others can be deterred by a sentence based on the guideline range for possession of a semiautomatic assault rifle, since that conduct is no longer criminal. Instead, the more apt guidelines range should be based on the conduct that is still criminal—selling a firearm without the proper documentation. That offense has a base offense level of 12. USSG § 2K2.1(a)(7). Adding the stipulated increases and subtracting the reduction for acceptance of responsibility produces a total offense level of 21, which has a sentencing range of 37 to 46 months for Criminal History Category I.[7]

Taking into account the guidelines as well as the sentencing goals of § 3553(a), I find that a reasonable sentence in this case is 40 months imprisonment. This sentence gives recognition to the guideline range while also applying an appropriate reduction because of the removal of criminality of the offense used to calculate that range.

F.Supp.2d 1269, ——, 2005 WL 273168, at *14 (D.Utah 2005).

**7.** The third offense in this case grouped under the Sentencing Guidelines, distribution of a Schedule II controlled substance within 1,000 feet of a school, has an even lower sentencing range. Because of the relatively small amount of controlled substances involved in the relevant conduct (equivalent to 777.75 grams of marijuana), the base offense level would be eight, USSG § 2D1.1(c)(16), plus an increase of two levels for the offense characteristic of distribution in a protected location, USSG § 2D1.2(a)(1), for an adjusted offense level of ten. With a two-level reduction for acceptance of responsibility, the total offense level would be eight, with a sentencing range under the guidelines of zero to six months.