# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2247

_____

United States of America,       *
                                     *

           Appellee,     *

                                       *     Appeal from the United

          v.                         *     States District Court for

                                       *     the Northern District of

Kenneth Donald Lewis,        *     Iowa

                                       *

           Appellant.     *

_____

Submitted: January 8, 2001
Filed: May 10, 2001

_____

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and ALSOP,[1] District Judge.

_____

ALSOP, District Judge.

       Kenneth Donald Lewis appeals the sentence he received after pleading guilty to one count of being a felon in possession of a firearm and one count of making a false statement in an attempt to acquire a firearm. Because we are unable to ascertain

_____

[1] The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota, sitting by designation.

whether or not the district court recognized its authority to depart from the guideline sentencing range, we vacate the sentence and remand for resentencing.

The firearm in question is a family heirloom Sears and Roebuck 20-gauge shotgun, which Lewis inherited from his father. Lewis never purchased ammunition for the gun. Lewis was aware that because of his prior felony convictions he could not legally keep his deceased father's prized gun, therefore, he gave it to his son.

Facing financial hardship and threatened with immediate disconnection of utilities, Lewis obtained possession of the shotgun for the sole purpose of pawning it to obtain cash to pay bills. Upon pawning the gun, Lewis received fifty dollars, which he used to pay utility bills.

Because the shotgun was a family heirloom, Lewis returned to the pawn shop a few days later to retrieve it. He filled out an ATF form 4473, which must be completed before acquiring a firearm from a licensed dealer. On the form, he falsely denied being previously convicted of an offense punishable by a prison term exceeding one year. All other information he provided was accurate, including his name, social security number, and address. The ATF form was submitted for clearance by the National Instant Check System. Lewis was denied clearance to reclaim the gun. Lewis and his wife returned later that same day and his wife correctly filled out the ATF form, received clearance, and regained the gun. The gun was immediately returned to Lewis's son.

Lewis was indicted for possession of the firearm, 18 U.S.C. § 922(g)(1) (1994), and making a false statement on the ATF form, 18 U.S.C. § 922(a)(6) (1994). He pled guilty to both counts and was given a three level downward adjustment to his Base Offense Level for acceptance of responsibility. Lewis ultimately had a total offense level of twenty-one and a criminal history category of VI. The guideline sentencing range was seventy-seven to ninety-six months imprisonment.

-2-

At sentencing, Lewis filed a motion for a U.S.S.G. § 5K2.11 lesser harms downward departure claiming that his possession of the firearm and false statement on the ATF form were not the kinds of harms that Congress envisioned when it enacted the law proscribing those offenses. *See* U.S. Sentencing Guidelines Manual § 5K2.11 (1998). The district court denied the motion and sentenced Lewis to two concurrent seventy-seven month terms of imprisonment and three years supervised release.

Lewis appeals the sentence contending that while the district court acknowledged it had the authority to depart on the felon in possession count, it erroneously believed it did not similarly have the authority to depart on the count of making a false statement in connection with the acquisition of a firearm. He argues that the court erred because Congressional intent behind both laws was identical. The government, on the other hand, argues that the district court fully appreciated its authority to depart, yet merely refrained from so doing.

A district court's application, construction, and interpretation of the terms of the relevant guidelines is subject to *de novo* review. *See United States v. O'Kane*, 155 F.3d 969, 971 (8th Cir. 1998). The district court's decision to depart from the guidelines is accorded an abuse-of-discretion review, *see Keen v. United* States, 518 U.S. 81, 97-1000, 116 S. Ct. 2035, 2046-48 (1996); *O'Kane*, 155 F.3d at 971, but if the district court correctly "understood its authority to depart downward, but declined to do so in the circumstances presented, its decision not to exercise its authority is unreviewable" on appeal absent an unconstitutional motive. *United States v. Saelee*, 123 F.3d 1024, 1025-26 (8th Cir. 1997). We must, thus, ascertain whether the district court recognized its authority to depart or whether it erroneously determined that it did not have the authority to depart under U.S.S.G. § 5K2.11 on the count of making a false statement in connection with the acquisition of a firearm. Because we cannot discern from the record whether the district court erred in its application and interpretation of the guidelines or merely exercised its discretion not to depart, we remand for resentencing.

There is a dearth of lesser harms case law. It has not yet been explicitly decided in this Circuit that the "lesser harms" rationale of U.S.S.G. § 5K2.11 permits a sentencing court to depart for violations of 18 U.S.C. § 922(a)(6), making a false statement in connection with the acquisition of a firearm. We hold that it does.

U.S.S.G. § 5K2.11 permits a sentencing court to depart downward from the otherwise applicable sentencing guideline range when the defendant's conduct does not "cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue." U.S.S.G. § 5K2.11. The guideline itself offers two examples of technically unlawful conduct that may receive a reduced sentence because it did not threaten the harm Congress sought to prevent when it enacted the statute: a war veteran possessing a machine gun or grenade as a trophy and a school teacher possessing controlled substances for display in a drug education program. *See id.*

In *United States v. White Buffalo*, we previously held that "the sentencing commission must have envisioned departures under § 5K2.11 when an illegal weapon is not possessed for an unlawful purpose." 10 F.3d 575, 576 (8th Cir. 1993). Although such was the issue in *White Buffalo*, U.S.S.G. § 5K2.11 is not limited in its application to departures for violations of gun possession prohibitions. It similarly applies, in the sentencing judge's discretion, to departures when one violates 18 U.S.C. § 922(a)(6) and when the defendant's conduct does not threaten the harm or evil Congress sought to prevent when it enacted that statute.

The Government argued at sentencing that violating § 922(a)(6) was worse than or otherwise different from violating § 922(g)(1) because it showed a desire to cover-up illegal firearm possession and because it involved an affirmative misrepresentation to the Government. These arguments are in error. The government seemed to advocate a type of "strict liability" analysis to the false statement provision of the statute. The government's argument would take this provision out from under the umbrella of

situations to which the lesser harms analysis applies.  That is because violating this section would always entail an affirmative misrepresentation to the Government. Nonetheless, the sentencing guidelines allow a lesser harms departure when a person violates any statute, when the violation does not threaten the harm or evil sought to be prevented by the statute.  *See* U.S.S.G. § 5K2.11.

The two sections of 18 U.S.C. § 922 to which Lewis pled, §§ 922(a)(6) and (g)(1), share the same purpose: to keep firearms out of the hands of people Congress has determined to be too dangerous to use firearms safely.[2]  *See United States v. Huddleston*, 415 U.S. 814, 824-25, 94 S.Ct. 1262, 1268-69 (1974); *Barrett v. United States*, 423 U.S. 212, 218-21, 96 S.Ct. 498, 502-3 (1976).  Congressman Celler, the House Manager of the Gun Control Act, which amended § 922(g), stated:

> [W]e are convinced that a strengthened system can significantly contribute to reducing the danger of crime in the United States.  No one can dispute the need to prevent drug addicts, mental incompetents, persons with a history of mental disturbances, and persons convicted of certain offenses, from buying, owning, or possessing firearms.  This bill seeks to maximize the possibility of keeping firearms out of the hands of such persons.

114 Cong. Rec. 21784 (daily ed. July 17, 1968) (statement of Rep. Celler); *see also Huddleston*, 415 U.S. at 828, 94 S.Ct. at 1270; *Barrett*, 423 U.S. at 220-21, 96 S.Ct. at 503.

Preventing the acquisition of firearms by punishing false statements on an ATF form under § 922(a)(6) is the means to the end of preventing the act of possessing a firearm, prohibited by § 922(g)(1).  *See Huddleston*, 415 U.S. at 824-25, 94 S.Ct. at

---

[2] Sections 922(a)(6) and (g)(1) were enacted as part of the Omnibus Crime Control and Safe Streets Act of 1968, P.L. 90-351 ("Crime Control Act").  The statute, specifically § 922(g), was further amended that same year by the Gun Control Act of 1968, P.L. 90-618 ("Gun Control Act").

1269. Analyzing Congressional intent behind § 922(a)(6), the Supreme Court explained:

> Section 922(a)(6) . . . was enacted as a means of providing adequate and truthful information about firearms transactions. Information drawn from records kept by dealers was a prime guarantee of the Act's effectiveness in keeping "these lethal weapons out of the hands of criminals, drug addicts, mentally disordered persons, juveniles, and other persons whose possession of them is too high a price in danger to us all to allow."

*Id.* (quoting 114 Cong. Rec. 13219 (1968) (remarks of Sen. Tydings)).

Thus, § 922(a)(6) has no purpose independent of § 922(g)(1). By prohibiting certain persons from possessing or obtaining firearms, "the 'harm or evil' the law seeks to prevent is violent crimes and loss of human life." *White Buffalo*, 10 F.3d at 576-77; *see also* 114 Cong. Rec. 21783-86 (daily ed. July 17, 1968) (statement of Rep. Celler) (describing incidents of murders and assaults with deadly weapons as the impetus behind the Gun Control Act and stating "[i]t is not only deliberate murder, robbery and assault which this legislation seeks to reduce, but also acts of passion and gun suicides"); 114 Cong. Rec. 13219 (daily ed. May 14, 1968) (statement of Sen. Tydings) (describing the "horrible and stark figures of death and destruction caused by misuse of firearms" and the need for laws that will reduce this "tragic toll" as the impetus behind the Crime Control Act); H.R. Rep. No. 1577 (1968), *reprinted in* 1968 U.S.C.C.A.N. 4410, 4412-13 (general statement regarding the Gun Control Act); S. Rep. No. 1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2163-64 (statement regarding the firearms control provisions of the Crime Control Act).

As we noted in *White Buffalo*, the guidelines authorize reasonable departure for an act that is technically unlawful, yet not committed for an unlawful purpose. *See White Buffalo*, 10 F.3d at 576-77. The lesser harms analysis, thus, may apply to situations when a false statement is made on an ATF form when the sought after weapon is not sought after for an unlawful purpose. Therefore, if the district court were persuaded by Lewis's proffered motive, the district court certainly could conclude that

briefly possessing a firearm in order to pawn it to pay bills and attempting to keep a family heirloom in the family were not the types of harms or evil envisioned by Congress when it enacted §§ 922(a)(6) and 922(g)(1). Having so found, the district court would have the authority to depart downward from the guideline sentencing range. However, we leave it to the district court to determine the ultimate facts bearing on the application of the lesser harms departure.

Because the Court cannot determine from the record whether the district court denied a lesser harms departure because it thought itself powerless to depart or whether it considered the facts and decided that a departure was not warranted, we vacate the sentence and remand to the district court for resentencing.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.