Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 30, 2004        Decided August 3, 2004

No. 03-3118

UNITED STATES OF AMERICA,
APPELLANT

v.

CHRISTOPHER E. RILEY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00314–01)

*Valinda Jones*, Assistant U.S. Attorney, argued the cause for appellant. With her on the briefs were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *John R. Fisher*, Assistant U.S. Attorney. *Thomas J. Tourish, Jr.*, Assistant U.S. Attorney, entered an appearance.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*David W. Bos*, Assistant Federal Public Defender, argued the cause for appellee. With him on the brief was *A. J. Kramer*, Federal Public Defender.

Before: ROGERS, TATEL, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* ROGERS.

GARLAND, *Circuit Judge*: The United States appeals from a judgment of the United States District Court, granting defendant Christopher Riley a downward departure from the sentence required by the United States Sentencing Guidelines. Reviewing the judgment de novo, we hold that the departure was improper and remand the case for resentencing.

I

On April 24, 2003, Riley pled guilty to a federal grand jury's superceding indictment charging him with one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Riley did not enter into a plea agreement with the government or otherwise stipulate in writing to the facts of his crime. The relevant events are, however, partially chronicled in a government proffer offered at the plea hearing, with which the defendant said he agreed. 04/24/03 Tr. 11–13. They are also chronicled in a Presentence Investigation Report (PSR) prepared by the United States Probation Office, which the defendant agreed contained no material inaccuracies. The following recitation begins with information from these sources.

At approximately 6:45 on the morning of May 7, 2002, a Special Agent of the Federal Bureau of Investigation (FBI) was on his way to an FBI field office in downtown Washington, D.C., when he noticed a brown Chevrolet Suburban automobile parked directly across the street from the field office. The car, which bore Maryland license plates, had two large antennae, a Fraternal Order of Police sticker on the back window, a red light, and a Metropolitan Police Department (MPD) placard on the dashboard. Riley was inside the car. The FBI agent stopped, called the FBI Communications

Center to check the car's license plates and, while waiting for a response, observed Riley get out of the car and walk toward a building. After being advised that the car had been reported stolen, the agent approached the building as Riley came out. The agent asked Riley if he was the car's owner, and Riley said that he was.

The FBI agent then asked Riley if he had any weapons; Riley said that he did. A search of his person revealed a fully-loaded, semi-automatic handgun in a holster on his hip. Riley then told the agent that he was an MPD chaplain and produced a Police Department identification card and badge. He admitted that he was not a sworn police officer and that he did not have a permit to carry a gun in the District. He did claim, however, to have a permit to carry the gun in Maryland. (Riley's counsel repeated that claim at the plea hearing.) As for the car, Riley explained that he had just purchased it from a friend, and immediately called the friend to confirm for the agent that a sale had transpired. Meanwhile, MPD officers arrived on the scene and arrested Riley.

The PSR reviewed Riley's criminal history and offense level under the Sentencing Guidelines. It noted that Riley had been convicted in 1989 in Virginia federal court for transporting a firearm across state lines while under felony indictment, in violation of 18 U.S.C. § 922(n). That conviction was the predicate offense for the § 922(g)(1) charge. The PSR also noted that Riley had several other prior convictions.[1] Because all of Riley's convictions were more than 10 years old and none involved more than 13 months' imprisonment, the PSR assigned him zero criminal history points, yielding the lowest criminal history category of I. PSR ¶¶ 27–32; *see* U.S. Sentencing Guidelines Manual § 4A1.2(e) (2002) [hereinafter U.S.S.G.]. The PSR also calculated a base offense level of 14 under U.S.S.G.

---

[1] Those included bank fraud (by using a false identification card), which was the underlying felony for the § 922(n) offense; a 1989 District of Columbia conviction for possessing a prohibited weapon; other D.C. convictions for possessing a false identification document with intent to defraud, and for theft of stolen property; and a 1990 Virginia conviction for impersonating a police officer.

§ 2K2.1(a)(6)(A) — the guideline applicable to violations of § 922 — and reduced it by two levels for acceptance of responsibility. PSR ¶¶ 16–25.

Riley's criminal history category and offense level generated a guidelines sentencing range of 10 to 16 months' imprisonment. *See* PSR ¶ 72 (citing U.S.S.G. ch. 5, pt. A (1992)). As the PSR reported, that range rendered Riley ineligible for probation. *Id.* ¶ 10; *see* U.S.S.G. § 5B1.1, cmt. n.2; *id.* § 5C1.1(f). The Probation Office reported that it had received no information that would justify a departure from the guidelines range. PSR ¶ 84.

In a written motion to the district court, filed two days before the sentencing hearing, Riley asserted that there was more to the story than was reflected in the plea hearing and PSR. *See* Def.'s Mot. for Downward Departure [hereinafter Motion]. He contended that, on the evening of May 6, 2002, he had delivered an invocation at an annual memorial service for law enforcement officers. He then participated in a "ride-along" with an MPD officer, and eventually accompanied that officer to a 24–hour shooting range in Maryland. In the morning, he drove directly to work from the shooting range. According to Riley, he was a switching engineer employed as a "Verizon Federal Contractor" and assigned to work at an office of the Bureau of Alcohol, Tobacco and Firearms (ATF) near where he was intercepted by the agent. Had it not been for his arrest, he said, he "would have secured the weapon at the ATF office upon his arrival." *Id.*

Based on this account of his offense conduct, Riley asked the court to depart downward four offense levels so that he could be sentenced to three years' probation. He made this motion pursuant to two provisions of the guidelines manual: U.S.S.G. § 5K2.11, which authorizes a departure if the defendant's conduct did not threaten the harm sought to be prevented by his statutory offense; and U.S.S.G. § 5K2.0, which authorizes a departure if circumstances distinguish a defendant's conduct from the "heartland" of offenses covered by the applicable offense guideline. The government responded orally at the hearing. The prosecutor did not ad-

dress the truth of Riley's factual claims, but contended that they did not justify departure.

At the sentencing hearing on August 29, 2003, the district court granted Riley's motion for a four-level departure and sentenced him to three years' probation. Noting that Riley was "gainfully employed," the court said:

> He hasn't done anything wrong since 1989. He supports his children or tries to support his children. He seems to me to be an ideal candidate for probation, and I see no point at all in sending him to prison at this point. I am going to grant the Motion for Departure, and you can put me on Mr. Ashcroft's list.

08/29/03 Tr. 6. Although the court also said that the sentencing issue was "the reason for which he possessed the weapon," *id*. at 5, it made no mention of the circumstances of Riley's arrest or of his representations regarding the shooting range. The court later noted on its judgment order that it departed downward "Upon motion of defendant — §§ 5K.2 and 5K.11 [sic]," and checked a box indicating that it adopted the factual findings in the PSR. The government contends that the record does not support a downward departure under either U.S.S.G. § 5K2.0 or § 5K2.11.

## II

Our standard of review of decisions to depart from an otherwise applicable guidelines range has recently changed. Previously, pursuant to 18 U.S.C. § 3742(e), we reviewed a district court's factual findings for clear error and its decision to depart from the guidelines for abuse of discretion. *See Koon v. United States*, 518 U.S. 81, 97–99 (1996). In 2003, however, Congress amended § 3742(e) in § 401(d) of the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act (PROTECT Act), Pub. L. No. 108–21, 117 Stat. 650 (Apr. 30, 2003). Although courts of appeals must still "accept the findings of fact of the district court unless they are clearly erroneous," we must now review a district court's decision to depart from the guideline range "de novo." 18 U.S.C. § 3742(e); *see United States v. Mallon*, 345 F.3d

943, 946 (7th Cir. 2003).[2] Those circuits that have decided the issue have held that the judicial review provision of the PROTECT Act applies with immediate effect, and without constitutional disability, to appellate proceedings after April 30, 2003, the date the PROTECT Act was signed into law.[3] Today, we join them.

Although the PROTECT Act became law five months before Riley filed this appeal and four months before he was sentenced, the conduct for which he was convicted had taken place a year earlier. Riley argues that applying the Act's de novo standard to review sentences for crimes committed before April 30, 2003 would violate the presumption against the retroactive application of statutes. *See, e.g.*, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 268 (1994). But a "statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." *Id.* at 269. Rather, to determine retroactive effect, "the court must ask whether the new provision attaches new

---

[2] Specifically, we review "de novo the district court's application of the guidelines to the facts," to determine whether "the sentence departs from the applicable guideline range based on a factor that — (i) does not advance the objectives set forth in section 3553(a)(2); or (ii) is not authorized under section 3553(b); or (iii) is not justified by the facts of the case." 18 U.S.C. § 3742(e) & (e)(3)(B). We continue, however, to "give due deference to the district court's application of the guidelines to the facts" in determining whether a sentence departs from the applicable guidelines range "to an unreasonable degree." *Id.* § 3742(e) & (e)(3)(C).

[3] *See United States v. Frazier*, 340 F.3d 5, 14 (1st Cir. 2003); *United States v. Kostakis*, 364 F.3d 45, 47 (2d Cir. 2004); *United States v. Stockton*, 349 F.3d 755, 764 & n.4 (4th Cir. 2003); *United States v. Bell*, 371 F.3d 239, 241–42 (5th Cir. 2004); *United States v. Mallon*, 345 F.3d 943, 946 (7th Cir. 2003); *United States v. Hutman*, 339 F.3d 773, 775 (8th Cir. 2003); *United States v. Daychild*, 357 F.3d 1082, 1106 (9th Cir. 2004); *United States v. Lang*, 364 F.3d 1210, 1214 n.1 (10th Cir. 2004); *United States v. Kim*, 364 F.3d 1235, 1240 n.3 (11th Cir. 2004); *see also United States v. D'Amario*, 350 F.3d 348, 356 (3d Cir. 2003) (finding it unnecessary to decide which standard of review to apply).

legal consequences to events completed before enactment." *Id.* at 269–70. The de novo review provision at issue here does not change the consequences of Riley's unlawful acts. As the Seventh Circuit has explained, the provision:

> . . . does not change the statutory penalties for crime, affect the calculation of the Guidelines range, or alter the circumstances under which departures are permitted. It changes *who* within the federal judiciary makes a particular decision, but not the legal standards for that decision. Instead of one district judge, three appellate judges now decide whether a departure is justified.

*Mallon*, 345 F.3d at 946. In this respect, the provision is like "a new jurisdictional rule," which "takes away no substantive right but simply changes the tribunal that is to hear the case." *Landgraf*, 511 U.S. at 274. In such circumstances, "[p]resent law normally governs." *Id.*

Riley also contends that applying the PROTECT Act would violate the Constitution's Ex Post Facto Clause, U.S. CONST. Art. I, § 9, cl. 3, "because the Act is punitive in nature." Appellee's Br. at 17; *see Smith v. Doe*, 538 U.S. 84, 92 (2003) ("If the intention of the legislature was to impose punishment, that ends the [Ex Post Facto] inquiry."). But there is nothing — and Riley does not contend that there is anything — punitive about the Act's new standard of appellate review. Instead, he contends that the Act is punitive when "considered as a whole," Appellee's Br. at 17, referring to the Act's "substantive" as well as procedural provisions, *id.* at 18. Riley is presumably alluding to sections of the Act that impose new or increased criminal penalties for specified conduct. *See, e.g.*, 18 U.S.C. § 2251(e) (increased penalty for sexual exploitation of children); *id.* § 3553(b)(2) (new sentencing rules for defendants convicted of "[c]hild crimes and sexual offenses"). Riley, however, has no standing to complain about provisions that do not apply to him, and those sections therefore do not affect our analysis here.[4]

---

[4] The cases Riley cites for the proposition that a statute must be examined as a whole to determine whether it is punitive are

Finally, Riley draws our attention to two other new provisions of the PROTECT Act that he contends make it unfair to apply any part of the Act to him. First, a district court's reasons for departing from a guidelines range must now "be stated with specificity in the written order of judgment and commitment," 18 U.S.C. § 3553(c)(2), putting a greater premium on factfinding than perhaps the district judge realized. Although the prior statute had also required the court to state "the specific reason" for a departure, the reason had to be stated only "in open court." *See id*. § 3553(c) (2000) (amended at 18 U.S.C. § 3553(c) (2004)). This difference has no consequence here, however, because even treating the court's oral statements as if they had been written, and even accepting the defendant's version of the facts, we conclude in Parts III–V that the departure was unwarranted.

Second, Riley notes the PROTECT Act provides that, if an appellate court remands for resentencing, the district court may not impose a sentence outside the applicable guidelines range:

> except upon a ground that — (A) was specifically and affirmatively included in the written statement of reasons required by section 3553(c) in connection with the previous sentencing of the defendant . . . ; and (B) was held by the court of appeals, in remanding the case, to be a permissible ground of departure.

18 U.S.C. § 3742(g)(2). Riley worries that this provision could unfairly deprive him of the right to raise additional grounds that he has since identified to support his reduced sentence. Again, this provision has no consequence here. As discussed in Part V, we have considered the additional grounds that Riley proposes, including those arguably raised

---

inapposite, as they undertook such examinations only to determine whether individual statutory provisions were truly more onerous than their predecessors. *See, e.g.*, *Dobbert v. Florida*, 432 U.S. 282, 294 (1997); *United States v. Shorty*, 159 F.3d 312, 317 (7th Cir. 1998). There is nothing in the substantive provisions of the PROTECT Act that would shed such light on the de novo review provision.

for the first time on appeal, and conclude that none justifies the sentence pronounced by the district court.

## III

The first ground for departure upon which the district court relied, U.S.S.G. § 5K2.11, is entitled "Lesser Harms" and permits a downward departure if the defendant's conduct did "not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue."[5] Riley asserts that the harm sought to be prevented by § 922(g)(1) is the possession of a firearm for an unlawful purpose, and that because he had no unlawful purpose, he is eligible for departure under § 5K2.11.

Section 922(g), however, sweeps more broadly than Riley admits, drawing the criminal line at possession, not purpose. The statute declares it flatly "unlawful for any [prohibited] person . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition," 18 U.S.C. § 922(g), and includes felons on the list of prohibited persons, *see id.* § 922(g)(1). To commit the crime, the felon need only possess the gun "knowingly." *Id.* § 924(a)(2). As the Supreme Court has repeatedly noted, the federal laws that bar felons from possessing firearms have "a broad prophylactic purpose." *Dickerson v. New Banner Inst.*, 460 U.S. 103, 118 (1983) (describing the purpose of Title IV of the Gun Control Act of 1968, a predecessor of 18 U.S.C. § 922(g)).[6] And while there certainly are statutory

---

[5] Section 5K2.11 also articulates a second theory of "lesser harms," permitting a district court to depart downward if the defendant committed the crime "to avoid perceived greater harm." U.S.S.G. § 5K2.11. That theory is not at issue here.

[6] *See, e.g.*, *Lewis v. United States*, 445 U.S. 55, 63 (1980) (holding that former felon-in-possession statute, 18 U.S.C. § 1202, "was a sweeping prophylaxis, in simple terms, against misuse of firearms"); *Huddleston v. United States*, 415 U.S. 814, 824 (1974) (explaining, with respect to Title IV, that the "principal purpose of federal gun control legislation . . . was to curb crime by keeping firearms out of the hands of those not legally entitled to possess them because of

provisions that are concerned with the defendant's purpose in possessing the firearm, *see*, *e.g.*, 18 U.S.C. § 924(c) (prohibiting using or carrying a firearm during and in relation to a crime of violence or drug trafficking offense, or possessing a firearm in furtherance of any such crime), § 922(g)(1) is not one of them.[7] Accordingly, the mere absence of an unlawful purpose does not warrant a departure under § 5K2.11.

Riley notes that § 5K2.11 provides two examples of situations in which a departure might be warranted because the defendant's conduct does not threaten the evil sought to be proscribed by the statute, and he contends that those examples counsel a departure in his case. The examples are "where a war veteran possessed a machine gun or grenade as a trophy, or a school teacher possessed controlled substances for display in a drug education program." U.S.S.G. § 5K2.11. Tellingly, however, neither example involves a statutory bar on possession by a prohibited person; rather, each involves a ban on a particular object because of concern over how that object might be used. The same is true of the two cases that Riley cites involving departures where the defendant violated 26 U.S.C. § 5861, which prohibits the possession of certain unregistered, sawed-off firearms.[8]

age, criminal background, or incompetency") (internal citation and quotation marks omitted); *see also* cases cited *infra* note 7.

[7] *See United States v. Cutright*, 2000 WL 1663451, at *4 (4th Cir. 2000) (unpublished op.) ("[A] conviction under § 922(g) focuses on the defendant's status as a convicted felon, not on the reason for possessing a firearm."); *United States v. Reynolds*, 215 F.3d 1210, 1214 (11th Cir. 2000) (stating that § 922(g) does not "focus on the motive or purpose of the current possession of the firearms"); *United States v. Prator*, 939 F.2d 844, 846 (9th Cir. 1991) ("Section 922(g)(1) makes the act of receipt of a firearm by a felon a crime without regard to his motive for such possession.").

[8] *See United States v. White Buffalo*, 10 F.3d 575, 576 (8th Cir. 1993) (affirming § 5K2.11 departure for a Native American, with no prior convictions, who lived in a remote part of a reservation and used the shotgun "to shoot skunks, weasels, and raccoons that killed his chickens"); *United States v. Hadaway*, 998 F.2d 917, 919 (11th Cir. 1993) (remanding for possible departure under § 5K2.11 where

Nor can Riley find support in the only appellate cases that have even entertained the possibility of a § 5K2.11 departure for a violation of § 922(g)(1). In those cases, the courts suggested that criminalizing the innocent and *transitory* possession of a weapon might be outside the purpose of § 922(g).[9] Similarly, this circuit has held that innocent possession could be a *defense* in a § 922(g) case in which a delivery truck driver testified that he had found the gun in a paper bag near a school, and that he took possession only to keep it out of the children's reach, intending to deliver it to a police officer he knew would be at his next stop. *United States v. Mason*, 233 F.3d 619, 621 (D.C. Cir. 2001). To qualify for such a defense, we held that the record must show that the defendant's possession was "transitory" and that he "took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible." *Id.* at 624.

Riley's version of his conduct does not establish transitory possession, or any similar circumstance. He was not, for example, apprehended at a shooting range. He did say that he *used* the gun at a range, but he did not say that it first came into his possession at the range, or that he did not

---

a non-felon defendant claimed to have traded a bucket of sheetrock mud for a sawed-off shotgun, "intending to keep it as a curiosity or to use it for parts"); *see also United States v. Bristow*, 110 F.3d 754, 758 n.5 (11th Cir. 1997) (distinguishing *Hadaway* and other § 5861 departure cases because in those cases "the *object* of the possession, the unregistered, sawed-off shotgun, causes the possession to be unlawful," while in a § 922(g)(1) case "the classification of the *possessor* as a convicted felon causes the possession to be unlawful").

[9] *See United States v. Clark*, 128 F.3d 122, 123 (2d Cir. 1997) (declaring that a departure "might have been" available under § 5K2.11, "depending on whether the defendant was to retain possession of the gun for only a brief time necessary to deliver or send it to his brother [as a gift] and whether, prior to delivery, the gun would remain readily accessible to the defendant"); *United States v. Lewis*, 249 F.3d 793, 797 (8th Cir. 2001) (holding that "briefly possessing a firearm in order to pawn it to pay bills" was not the kind of harm envisioned by § 922(a)(6) and (g)(1)).

intend to reclaim it from its "secured" location when it was time to leave work. To the contrary, he had obtained a Maryland permit for the weapon. Accordingly, even assuming the facts agreed to by Riley, this case involves a felon who possessed a firearm for an extended period of time, who carried that weapon fully loaded on his person near a federal building in downtown Washington, D.C., and who evidenced no intention to permanently relinquish it. The purpose of § 922(g) was to criminalize just such behavior.[10]

## IV

The second basis for the district court's departure was U.S.S.G. § 5K2.0, which states that "the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). As the guidelines manual explains:

> The Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to

---

[10] Riley also suggests that the purpose of § 922(g)(1) is merely to keep firearms out of the hands of people who are potentially dangerous or irresponsible, and that this purpose is served only where the defendant's predicate offense involved danger or violence. We reject this contention for the same reasons discussed above. Section 922(g)(1) applies to all felons regardless of the nature of their prior crimes. Moreover, as discussed in Part IV, to the extent that the nature of the predicate felony is relevant to sentencing, the offense guideline under which Riley was convicted already took that into account. *Compare* U.S.S.G. § 2K2.1(a)(6) (mandating base offense level of 14 if the defendant was simply a prohibited person), *with id.* § 2K2.1(a)(1)-(4) (mandating base offense level of at least 20 if the defendant was previously convicted of a crime of violence or controlled substance offense).

which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S.S.G. ch. 1, pt. A, intro. cmt. 4(b); *see also id.* § 5K2.0, cmt. In his motion for a downward departure, Riley argued that his innocent, sporting purpose for possessing the gun distinguished his case from the § 922(g)(1) heartland and entitled him to a § 5K2.0 departure. Riley is wrong for three reasons.

First, Riley's argument about "the heartland" of § 922(g)(1) largely repeats his argument about "lesser harms." *See United States v. Rojas*, 47 F.3d 1078, 1082 n.5 (11th Cir. 1995) (noting that implicit in the court's rejection of a departure under § 5K2.11 "is a finding that [the defendant's] case does not warrant a downward departure because it involves circumstances that distinguish it 'from the "heartland" cases covered by the guidelines'") (quoting U.S.S.G. § 5K2.0). But as we have explained, the statute intended to proscribe, and the guidelines to punish, precisely this case. Cases in which the defendant had an unlawful purpose — such as to use the weapon in a violent or drug trafficking crime — are in the heartland of other offenses, not of § 922(g). *See, e.g.*, 18 U.S.C. § 924(c); *see also United States v. Doe*, 960 F.2d 221, 224–25 (1st Cir. 1992) (noting that "simple possession, even by a felon, takes place in a variety of ways . . . many, perhaps most, of which do not involve likely accompanying violence").

Second, the Supreme Court has instructed that courts should not depart based on a factor that the applicable offense guideline has already taken into account, unless that factor "is present to an exceptional degree" — that is, unless it "is present to a degree substantially in excess of that which ordinarily is involved in the offense." *Koon*, 518 U.S. at 95–96 (quoting U.S.S.G. § 5K2.0).[11] In this case, the relevant

---

[11] To be more precise, this is the test *Koon* said applies if the factor is one that the guidelines indicate is an "encouraged" basis for departure. Although § 5K2.11 does make "lesser harms" an encouraged factor, for the reasons discussed above we do not

offense guideline, § 2K2.1, does take purpose into account. Riley was assigned a base offense level of 14 under that guideline because he was a "prohibited person" (a felon) when he committed the offense. *See* PSR ¶ 16 (citing U.S.S.G. § 2K2.1(a)(6)(A)). The same guideline, however, would have increased Riley's base offense level if he had used or possessed the firearm "in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5). On the other hand, the guideline would have decreased the base offense level if the firearm had been possessed for narrowly-defined reasons: "solely for lawful sporting or collection purposes." *Id.* § 2K2.1(b)(2). As we discuss in Part V.B below, Riley does not qualify for a decrease on that ground. But the fact that the guideline takes into account the circumstances in which a defendant's purpose should matter — as either an aggravating or a mitigating factor — counsels strongly against permitting purpose to serve also as a ground for departure unless it is truly "exceptional." Riley's purpose plainly was not.

Third, were we to accept that possession without an unlawful purpose is outside the § 922(g) heartland, there would be nothing left of that heartland. Guideline provision § 5K2.6 encourages upward departure "[i]f a weapon . . . was used or possessed in the commission" of an offense, and § 5K2.9 similarly encourages upward departure "[i]f the defendant committed the offense in order to facilitate . . . the commission of another offense." These provisions suggest that it is an *unlawful* purpose — not a neutral or "innocent" one — that is outside the heartland of cases.

regard Riley's case as falling within its compass. Hence, Riley's claim is more properly regarded as relying on an "unmentioned" factor, with respect to which *Koon* suggests an even stricter test. *See Koon*, 518 U.S. at 96 (admonishing courts to "bear in mind the Commission's expectations that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent'" (quoting U.S.S.G. ch. 1, pt. A)).

15

V

Finally, we address two further grounds that Riley advances to justify the sentence he received.

A

Riley argues that he is entitled to a § 5K2.0 departure by virtue of a "combination of factors" in addition to those we have discussed above. Appellee's Br. at 35. Riley says that these include the following: his predicate felony conviction was thirteen years old; the predicate felony was not a violent crime or drug trafficking offense; he had turned his life around to become an ordained minister and community leader; and he had been employed with the same company for eight years. Riley did not advance this theory below: his sentencing memorandum specified only the two grounds that we have discussed in Parts III and IV. *See* Motion. Whether the district court incorporated this theory into its reasoning, however, is less clear. Although the court's written comment specified only §§ 5K2.11 and 5K2.0, the court's statements at the sentencing hearing emphasized facts that might encompass this ground, including the fact that Riley was "gainfully employed" and that "[h]e supports his children or tries to support his children." 08/29/03 Tr. 6.[12]

---

[12] After the district court granted a departure, Riley's counsel further asserted that it had been unclear to the defendant that his thirteen-year-old felony could form the predicate for § 922(g). 08/29/03 Tr. 6–7. Now he advances this as another ground for departure. We find this assertion factually dubious, given that Riley had previously been convicted of possessing a gun while under felony indictment. In any event, because "[n]othing about the circumstances of [defendant's] offense afforded him less notice than any other offender would have had with respect" to the unlawfulness of his possession, his conduct is "not outside the heartland of such offenses." *United States v. Hutzell*, 217 F.3d 966, 969 (8th Cir. 2000); *see United States v. Bayles*, 310 F.3d 1302, 1311 (10th Cir. 2002) (holding that the "mere fact that [the defendant] was unaware that § 922(g)(8) prohibited his possession of firearms after the issuance of the [domestic violence] protective order does not remove his conduct from the heartland of § 922(g)(8) cases").

These grounds are, in any event, insufficient to warrant a departure in Riley's case. The fact that Riley's predicate conviction was old and for a non-violent crime, and the fact that he had no recent convictions, are not exceptional circumstances. The age of Riley's prior crimes was already taken into consideration by the criminal history guidelines, which accorded him the lowest criminal history category of I — as if he had no criminal record at all. In *In re Sealed Case*, 292 F.3d 913, 916–17 (D.C. Cir. 2002), this circuit held that a downward departure may not be based on a defendant's criminal history where the defendant is already in category I. *See also* U.S.S.G. § 4A1.3 ("The lower limit of the range for Criminal History Category I is set for a first offender with the lowest risk of recidivism. Therefore, a departure below the lower limit of the guideline range for Criminal History Category I on the basis of the adequacy of criminal history cannot be appropriate."). Moreover, the offense guideline under which Riley was sentenced likewise took account of the fact that his predicate offense was non-violent: as a consequence, his offense level was 14, *see* U.S.S.G. § 2K2.1(a)(6), rather than at least 6 levels higher, *see id.* § 2K2.1(a)(1)–(4).

The other cited characteristics — Riley's employment record, civic service, and family responsibilities — are also insufficient. The sentencing guidelines categorize these as "discouraged factors," which are " 'not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range' " and may not form the basis of a departure unless they are present to "an exceptional degree." *Koon*, 518 U.S. at 95–96 (quoting U.S.S.G. ch. 5, pt. H, intro. cmt.).[13] It is "the defendant [who] bears the burden

---

[13] *See* U.S.S.G. § 5H1.5 (employment record); *id.* § 5H1.6 (family ties and responsibilities); *id.* § 5H1.11 (civic, charitable, or public service); *see also United States v. Dyce*, 91 F.3d 1462, 1467 (D.C. Cir. 1996) (holding that departures for family circumstances are permissible only when the circumstances are "extraordinary"); *id.* at 1470 (holding that, "[l]ike family responsibilities, a defendant's education, employment record, and various good works are not ordinarily relevant in determining departures," and may be the

of proving by a preponderance of the evidence that he is eligible for a downward departure," *United States. v. Goodwin*, 317 F.3d 293, 297 (D.C. Cir. 2003), and Riley has given us no reason to think that his circumstances in these respects are exceptional in any way. Finally, Riley's claim that even if these factors do not individually warrant a departure, they do so in combination, faces an even higher — and here insurmountable — barrier: A departure based on such an alleged combination is permissible only in "an extraordinary" and "extremely rare" case. U.S.S.G. § 5K2.0, cmt.; *see Dyce*, 91 F.3d at 1468. Riley's is not such a case.

B

Riley also maintains that U.S.S.G. § 2K2.1(b)(2) provides an alternative ground for affirming the sentence he received, based not on a departure but rather on a downward adjustment of his base offense level. That subsection of the guideline applicable to § 922(g) convictions instructs courts to reduce the base offense level if the defendant "possessed all ammunition and firearms *solely* for lawful sporting purposes or collection." U.S.S.G. § 2K2.1(b)(2) (emphasis added). Riley claims that proper application of that provision would have yielded a base offense level of 6 and a guideline range of 0–6 months, which would have rendered him eligible for the probation to which he was sentenced. *See id.* § 5B1.1.

This claim is new on appeal and fails on the merits. Riley did not contend below that he had possessed the weapon *solely* for sporting purposes; his sentencing memorandum said only that he had gone to a shooting range the night before his arrest and that he had proceeded from there to his job in Washington. Moreover, the commentary to § 2K2.1 instructs courts to "determin[e] by the surrounding circumstances" whether a weapon was possessed solely for lawful sporting purposes or collection. Those circumstances include the "location and circumstances of possession," and the "na-

---

basis for one only if the defendant is likely to make a contribution to society of "an extraordinary degree") (internal quotation marks omitted).

ture of the defendant's criminal history (e.g., prior convictions for offenses involving firearms)." *Id.* § 2K2.1 n.10.

In Riley's case, the surrounding circumstances cut against his claim. He did not possess the weapon at a sporting location, but rather across a state line hours after its purported sporting use. *See United States v. Morrison*, 983 F.2d 730, 732 (6th Cir. 1993) (denying departure in part because the timing of sunset indicated that the defendant "was not hunting immediately prior to his arrest"). The weapon was fully loaded. *See United States v. Dudley*, 62 F.3d 1275, 1277 (10th Cir. 1995) (concluding that the "fact that the guns were loaded cuts against the contention that they were *solely* for sporting or collection purposes, rather than for personal protection"). And Riley's criminal history included prior convictions for firearms offenses. *See supra* Part I & n.1. In short, Riley simply cannot squeeze his circumstances into the narrow confines of § 2K2.1(b)(2).

## VI

Based on the above considerations, we conclude that the downward sentencing departure granted Riley by the district court was unwarranted. Our dissenting colleague does not disagree, but "would remand the case to the district court for detailed factual findings and an explication of reasons for departing from the Sentencing Guidelines." Dissent at 8. We decline to do so. Having given Riley every benefit of the doubt and having assumed the truth of every factual assertion he has offered here or in the district court, we have concluded that there are no facts the district court could find and no reasons it could explicate that — consistent with Riley's version of events — would justify a downward departure. The problem in this case is not just insufficient factfinding by the district judge, but the failure of the facts — as asserted by Riley himself — to warrant a departure. Were we to remand here, we would have to remand in every case in which the proffered facts fail to justify a departure under any of a defendant's theories, a result the Congress that passed the PROTECT Act could hardly have contemplated.

We, of course, agree that it is our responsibility to "accept the findings of fact of the district court unless they are clearly erroneous." 18 U.S.C. § 3742(e). But in resolving this case on the assumption that the facts are as the defendant alleges, we do not "make [our] own findings of fact" or "speculate" or "surmise" in any way that disadvantages the defendant, Dissent at 5 — just as we do not find facts when we assume the truth of a plaintiff's allegations in ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). In a case in which the defendant has neither offered nor alleged evidence from which a factfinding in his favor could reasonably be derived, there is no reason to remand for a factfinding that if made could not be legally sustained. *Cf. Al–Fayed v. CIA*, 254 F.3d 300, 309 n.10 (D.C. Cir. 2001) (observing that a court "need not remand to permit the district court to exercise its discretion to depart if its decision to do so on remand would constitute an abuse of discretion" (quoting *United States v. Fenner*, 147 F.3d 360, 363 (4th Cir. 1998))).

We also part company with our dissenting colleague in her repeated reliance on passages from *Koon v. United States* that have been legislatively superceded by the PROTECT Act. That statute was plainly intended to require courts of appeals to review "de novo the district court's application of the guidelines to the facts" in the context of sentencing departures, 18 U.S.C. § 3742(e); *see id.* § 3742(e)(3)(B), rather than to give the district court "due deference" as required by *Koon, see* 518 U.S. at 96–99 (rejecting de novo standard of review in favor of due deference/abuse-of-discretion).

Finally, the cases cited by the dissent do not support the proposition that our sister circuits, "faced with the task of conducting *de novo* review of sentencing departures after enactment of the PROTECT Act, [have] concluded that the proper remedy for insufficient fact-finding by the district court is a remand for additional fact-finding." Dissent at 8. Two of the cited cases are simply inapposite.[14] And the third,

---

[14] In *United States v. Bostic*, the Sixth Circuit expressly stated that it was *not* applying the PROTECT Act because the government had failed to assert it. 371 F.3d 865, 873 n.7 (6th Cir. 2004). The remand in *United States v. Lynch* had nothing to do with

while instructive, teaches a different lesson. In *United States v. Huerta*, the government and defendant presented conflicting versions of the facts, and the court of appeals remanded because the district court had failed to determine which version was correct. 371 F.3d 88, 95–96 (2d Cir. 2004). If that were true in this case, a remand might well be warranted. Here, however, we do not have conflicting versions of the facts; we have only Riley's. And even accepting Riley's version, the facts are insufficient to justify a departure from the applicable guidelines range. Under such circumstances, a remand would be futile.

## VII

For the foregoing reasons, we "set aside the sentence and remand for further sentencing proceedings" consistent with this opinion. 18 U.S.C. § 3742(f)(2)(B).

---

additional factfinding. In that case, the Fifth Circuit held that the district court had improperly ordered a consecutive sentence, and remanded the case to permit the court to state (for the first time) whether it had intended that sentence to constitute an upward departure from the guidelines. 2004 WL 1567852, at *3 (5th Cir. 2004).

ROGERS, *Circuit Judge*, concurring in part and dissenting in part: Because imposing a criminal sentence implicates "the most elemental of liberty interests — the interest in being free from physical detention by one's own government," *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, slip op. at 22 (2004) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1979)), it is imperative that courts reach sentencing decisions properly. *Cf. United States v. Saro*, 24 F.3d 283, 287–88 (D.C. Cir. 1994). The Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("the PRO-TECT Act"), Pub. L. 108–21, 117 Stat. 650 (April 30, 2003) (codified as amended at 18 U.S.C. § 3553ff), establishes a new, more demanding appellate standard of review that depends on detailed findings by the district court, by which the appellate court is bound, absent clear error. Because the court concludes that the record of appellee's sentencing contains unclear reasoning by the district court and lacks detailed factual findings on relevant considerations for departing from the United States Sentencing Guidelines, *see, e.g.*, U.S.S.G. §§ 5K2.0, 5K2.11, the court should obtain detailed findings from the district court before conducting its *de novo* review of the district court's departure from the Guidelines. For an appellate court to act on the basis of an insufficient district court record, and in the process to make findings of fact not touched upon by the court below, muddles the distinct and separate roles of the district and appellate courts under the PROTECT Act. Accordingly, I would remand the case to the district court, which has "an institutional benefit over appellate courts" that do not see nearly as many Guidelines cases, *Koon v. United States*, 518 U.S. 81, 98 (1996), so that the court may make detailed findings in support of its decision to depart from the Sentencing Guidelines. *See* 18 U.S.C. §§ 3553(c), 3742(e).

Under the PROTECT Act, the appellate court must accept the district court's findings of fact unless they are clearly erroneous, but reviews *de novo* for limited purposes the district court's determination to depart from the Sentencing

Guidelines. *See id*. § 3742(e). The appellate court is still required to give "due deference to the district court's application of the guidelines to the facts." *Id*. § 3742(e). *See In re Sealed Case*, 350 F.3d 113, 116 (D.C. Cir. 2003). However, if a sentence is outside the applicable guideline range, and is either not explained by a written statement of reasons, or based on an impermissible factor, *de novo* review is warranted. *See id*. § 3742(e)(3)(A), (B). But in conducting *de novo* review, the appellate court is limited by the PROTECT Act to determining, as relevant here, whether the departure (1) "does not advance the objectives" of 18 U.S.C. § 3553(a)(2), namely, reflecting the seriousness of the offense, promoting respect for the law, providing just punishment and adequate deterrence, protecting the public, and providing the defendant with effective correctional treatment; (2) is "not authorized" under *id*. § 3553(b), which directs that sentences be imposed within the guidelines range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission"; or (3) is "not justified by the facts of the case." *Id*. § 3742(e)(3)(B)(i)-(iii); *see also id.* § 3742(f).

The district court made the following findings of fact. After accepting appellee's plea to the superceding indictment, the court released appellee on his personal recognizance pending sentencing, finding that appellee "is gain[ful]ly employed. He has a stable residence. He has been in complete compliance since January of this year with all the conditions of pretrial supervision. I see no basis on which to lock him up at this point." Transcript of Plea Proceedings, Apr. 24, 2003, at 17. At sentencing, in considering the defense motion for a downward departure of four levels under U.S.S.G. §§ 5K2.0 and 5K2.11, the district court stated that the issue was "the reason for which [the appellee] possessed a weapon." Sentencing Transcript, Apr. 29, 2003, at 5. Noting that appellee's felony conviction was 13 years old, the court challenged the prosecutor's statement that "the government is confident that [appellee] was aware that he was not to posses a firearm under any circumstances." *Id.* In response to the

prosecutor's final statement that a departure would not be justified, the court stated, "[Appellee] is 42 years old. He has been gainfully employed. * * * He hasn't done anything wrong since 1989. He supports his children or tries to support his children. He seems to me to be an ideal candidate for probation, and I see no point at all in sending him to prison at this point. I am going to grant the Motion for a Departure, and you can put me on Mr. Ashcroft's list." *Id.* at 6. (Under the PROTECT Act, the Attorney General must report to the House and Senate Judiciary Committees within 15 days of any downward departure by a district court from the Sentencing Guidelines. *See* 18 U.S.C. § 3553 note (2003)). After hearing defense counsel's view that probation was warranted because appellee was "a very atypical [d]efendant," *id.* at 7, the district court, upon hearing from appellee personally, sentenced him to three years probation.

In the Judgment, the district court stated that it was departing from the Sentencing Guidelines under U.S.S.G. §§ 5K2.0 and 5K2.11 for the reasons stated in appellee's motion for downward departure, and that it was adopting the factual findings and Guideline application in the presentence report. Appellee's departure motion briefly described his current employment and the circumstances of his predicate felony conviction and present arrest in support of his claim that his "conduct [wa]s vastly different than the overwhelming majority of cases prosecuted under 18 U.S.C. § 922(g)." The motion argued that appellee's conduct did not threaten the harm sought to be prevented by § 922(g), but was more akin to comparable cases where courts had granted departures, and differed significantly from typical conduct covered by the heartland of cases encompassed by the Sentencing Guidelines. Other than reciting appellee's employment and arrest circumstances, however, the motion was cursory and devoid of substantive legal arguments, simply citing the holdings of various cases. While the presentence report provided additional factual information about appellee, the district court did not articulate which and to what extent any of these other facts influenced its decision to depart.

Doubtless, district court findings, whether oral or written, have often been far from extensive in view of the limited nature of appellate review that existed prior to the PROTECT Act. *See Koon*, 518 U.S. at 91 (1996); *United States v. Bridges,* 175 F.3d 1062, 1065 (D.C. Cir. 1999). While the PROTECT Act does not substantively change the district court's ability to depart from the Sentencing Guidelines in most cases, it does make a procedural change by requiring the district court to set out in writing its reasons for departure, as well as expanding the scope of appellate review of such departures. *See United States v. VanLeer*, 270 F. Supp. 2d 1318, 1324 (D. Utah 2003). Under § 3553(c)(2), the district court is required to state "with specificity" his or her "reasons [for departing] . . . in the written order of judgment and commitment." Previously the statute only required the district court to state "in open court" "the specific reason" for a departure. *See* 18 U.S.C. § 3553(c)(2004) (amending 18 U.S.C. § 3553(c)(2000)). *See* Op. at 8. The House sponsor and other supporters of the amendment, calling for *de novo* appellate review, were of the opinion that district courts were too often departing from the Sentencing Guidelines, and that the abuse of discretion standard for appellate review under *Koon* was inadequate to the task of ensuring that district courts followed the Guidelines. *See* Cong. Rec. H2422 (daily ed. Mar. 27, 2003) (statement of Rep. Feeney); *id.* at H2423 (statement of Rep. Sensenbrenner). By requiring the district court to provide written reasons, Congress increased the pressure on district courts to make detailed findings of fact to support their departure decisions. Indeed, even if the statutory language in § 3553(c) had remained unchanged, the more demanding *de novo* standard for appellate review itself places a greater premium on fact-finding by the district court.

I concur in holding that there is no retroactivity problem under the reasoning of *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994). *See* Op. at 6–7. The PROTECT Act neither impairs appellee's rights to a departure under the Sentencing Guidelines nor imposes new duties on appellee to obtain a departure. *See Ibrahim v. District of Columbia*, 208 F.3d 1032, 1035–36 (D.C. Cir. 2000). I also concur in holding

that applying the PROTECT Act to appellee does not violate the ex post facto clause of the Constitution, *see* Op. at 7, U.S. Const. art. I, § 10, cl. 1. The PROTECT Act does not increase the punishment for violations of 18 U.S.C. § 922(g). *See Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (citing *Collins v. Youngblood*, 497 U.S. 37, 43 (1990)). *Cf. United States v. Shorty*, 159 F.3d 312, 315 (7th Cir. 1998). However, the court brushes aside too quickly the concerns appellee raises about the practical impact of the PROTECT Act. *See* Op. at 8–9. These concerns are significant for purposes of enabling the appellate court to properly perform its role under the PROTECT Act. Because the PROTECT Act calls for written and more detailed fact-finding by the district court and makes the district court's findings that are not clearly erroneous binding on the appellate court, it necessarily follows that in departing from the Sentencing Guidelines, the district court's factual findings must be more rigorous. *See*, *e.g., VanLeer*, 270 F. Supp. 2d at 1324–25.

Without detailed factual findings by the district court to support a departure from the Sentencing Guidelines, the appellate court, even where, as here, it accepts appellee's version of the facts, *see* Op. at 8, is left to speculate and surmise. For instance, the court states that the district court "made no mention of the circumstances of [appellee's] arrest or of his representations regarding the shooting range." *Id.* at 5. The court then proceeds to make its own findings of fact, speculating that appellee evidenced no intention to permanently relinquish the firearm. *See id.* at 12. The court further acknowledges that the district court's reasoning in granting the departure was unclear. In this regard, the court observes that the district court's findings left uncertain whether the district court found that departure under U.S.S.G. § 5K2.0 was warranted based on a "combination of factors," which together might have taken the case outside the heartland of offenses covered by the Guideline. *Id.* at 15. The court implicitly admits, in making its own findings, that the district court failed to elaborate on key considerations that are significant for purposes of justifying a departure in the instant case, such as an explanation of precisely why the

district court concluded that appellee's case was "exceptional." *Id.* at 14, 17. Additionally, as the court describes, the district court only touched very generally on some of its reasons for finding departure warranted. *See id.* at 5.

Notwithstanding the absence of detailed factual findings by the district court, the court draws its own inferences and conclusions, stating, on the basis of an admittedly inadequate record, that appellee's circumstances were clearly not "exceptional." *Id.* at 14, 16–17. This conclusion reflects the quintessential type of fact-finding that a district court is in a better position to undertake than an appellate court. A determination of the reason why appellee possessed the firearm, *see, e.g., United States v. Shell,* 972 F.2d 548, 552 (5th Cir. 1992), as well as a determination of whether facts are present to "an exceptional degree," *Koon,* 518 U.S. at 95–96 (quoting U.S.S.G. ch. 5, pt. H, intro. cmt.), are best evaluated in the first instance by the district courts. *See United States v. Rhodes,* 145 F.3d 1375, 1383–84 (D.C. Cir. 1998). As the Supreme Court observed in *Koon,* 518 U.S. at 98, albeit in support of an abuse of discretion standard for appellate review, district courts have "an institutional advantage over appellate courts . . ., especially as they see so many more Guidelines cases than appellate courts do." *Koon,* 518 U.S. at 98. With enactment of the PROTECT Act, the district court's institutional advantage remains unchanged; appellate courts see far fewer Sentencing Guideline cases than district courts and, moreover, the district court has the opportunity to question the defendant personally. *See* FED. R. CRIM. P. 32(c). Consequently, a district judge's determination of a defendant's purpose or that a case is truly "exceptional" based on specific findings of fact will generally be more credible than when an appellate court makes the same determination based on a sparse factual record from the district court.

In making factual findings, *see* Op. at 12, 14, 16–17, and drawing inferences to support its conclusions, then, the court distorts the appellate court's role beyond that contemplated by the PROTECT Act. *Cf.* 18 U.S.C. § 3742(f). *See also*

*Williams v. United States*, 503 U.S. 193, 205 (1992). Simply assuming the defendants' proffer of the facts to be true, *see* Op. at 8, does not suffice, for this ignores the district court's "special competence — about the 'ordinariness' or 'unusualness' of a particular case." *Koon*, 518 U.S. at 98 (quoting *United States v. Rivera*, 994 F.2d 942, 951 (1st Cir. 1993)). Findings of fact by a district court reflect experienced judgment in Sentencing Guidelines cases to the factual proffers and arguments of the parties in a particular case. *See* FED. R. CRIM. P. 32(c). The colloquy between the prosecutor and the district court that occurred in this case is indicative of such judgments. Further, the presentence report contains detailed facts from which the district court may draw in determining whether or not to depart from the Sentencing Guidelines. *See id.* By contrast, a defendant, as here, may fail to identify all the relevant circumstances or fail to state them in a manner that is likely to persuade an appellate court. *See, e.g.,* Op. at 4, 8. Appellee's departure motion appears to assume that the age and nature of his predicate felony conviction, his current employment, and his innocent purposes in possessing the firearm sufficed to support a departure. Whether true or not, the deficiencies in the district court's factual findings pointed out by the court are of a type that should be fleshed out at a sentencing hearing, where in addition to obtaining assistance from the parties' written pleadings, the district court can independently question the parties as well.

Simply put, in the PROTECT Act, Congress not only preserved the significant fact-finding role of the district court sentencing, it insisted upon it. Congress' focus was not on transforming the fact-finding responsibilities long vested in the district courts, but rather on ensuring that the courts follow the Sentencing Guidelines. *See* 149 CONG. REC. H2423 (daily ed. Mar. 27, 2003) (statement of Rep. Feeney). To that end, Congress requires detailed fact-finding by the district court and written reasons in the event of departure from the Guidelines. *See* 18 U.S.C. § 3553(c). While expanding appellate review of sentencing departures in an effort to "address[ ] long-standing and increasing problems of downward

8

departures from the Federal sentencing guidelines," 149 CONG. REC. H2422 (daily ed. Mar. 27, 2003) (statement of Rep. Feeney), Congress made no change to the clearly erroneous standard of review of district court findings of fact. *See* 18 U.S.C. § 3742(e)(4). Importantly, the roles of the district court and the appellate court remain separate and defined under the PROTECT Act. Heretofore, the court has recognized the distinct perspective of the district court, *see Rhodes*, 145 F.3d at 1384, and has not been loath to remand in sentencing matters in recognition that a district court may draw different inferences than an appellate court looking only at a paper record. *See United States v. Lam*, 924 F.2d 298, 307 (D.C. Cir. 1991). Our sister circuit, faced with the task of conducting *de novo* review of sentencing departures after enactment of the PROTECT Act, has concluded that the proper remedy for insufficient fact-finding by the district court is a remand for additional fact-finding. *See United States v. Huerta*, 371 F.3d 88, 95 (2d Cir. 2004). As the Second Circuit observed, its review of the district court's sentencing determination was hampered by the limited nature of the district court's factual findings. *See id.* To date, other circuits have remanded for the district court's initial consideration of relevant considerations under the PROTECT Act. *See United States v. Bostic*, 371 F.3d 865, 877 n.10 (6th Cir. 2004); *United States v. Lynch*, 2004 WL 1567852 (5th Cir. 2004).

For these reasons, I would remand the case to the district court for detailed factual findings and an explication of reasons for departing from the Sentencing Guidelines, which must be stated "with specificity" and in writing, as required by the PROTECT Act. *See* 18 U.S.C. § 3553(c). Accordingly, to this extent, I respectfully dissent.