Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 28, 2004          Decided October 26, 2004

No. 03-3139

UNITED STATES OF AMERICA,
APPELLANT

v.

DARIN M. TUCKER,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00311–01)

*Lisa H. Schertler*, Assistant U.S. Attorney, argued the cause for appellant. With her on the briefs were *Roscoe C. Howard, Jr.*, U.S. Attorney at the time the brief was filed, *Kenneth L. Wainstein*, U.S. Attorney, and *John R. Fisher* and *Florence Y. Pan*, Assistant U.S. Attorneys. *Thomas J. Tourish, Jr.*, Assistant U.S. Attorney, entered an appearance.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Lisa B. Wright*, Assistant Federal Public Defender, argued the cause for appellee. With her on the brief was *A. J. Kramer*, Federal Public Defender. *Neil H. Jaffee* and *Shawn Moore*, Assistant Federal Public Defenders, entered appearances.

Before: GINSBURG, *Chief Judge*, and EDWARDS and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROBERTS.

ROBERTS, *Circuit Judge*: The district judge in this case declined to sentence the defendant according to the Sentencing Guidelines because he disagreed with the Guidelines. As the judge put it, he was "not going to be the instrument of injustice in this case." Presentence Hearing Tr. at 4 (July 18, 2003). The Supreme Court has explained that " '[s]imple justice' is achieved when a complex body of law developed over a period of years is evenhandedly applied." *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981). The district judge's apparent election to sentence according to his own lights, rather than pursuant to the Sentencing Guidelines binding on him and on us, compels us to vacate and remand so that we may be certain Tucker is sentenced under the Guidelines and in accordance with the rule of law we are all duty-bound to uphold.

## I.

On June 20, 2002, a police officer on a routine patrol approached Darin M. Tucker and asked him "What's up?" In response, Tucker charged the officer, causing him to fall backward. The officer pursued Tucker across the street, caught him, and placed him under arrest for assaulting a police officer. In the search incident to arrest, the officer discovered two clear plastic bags containing 45.3 grams of crack cocaine. On March 20, 2003, pursuant to an agreement with the government, Tucker pled guilty to possession with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii).

The pre-departure sentencing range for Tucker under the United States Sentencing Guidelines is not in dispute. Given the level of the offense, Tucker's criminal history category, and a three-offense-level reduction for acceptance of responsibility, the appropriate pre-departure sentencing range was 70–87 months' imprisonment. United States Br. at 9 (citing Presentence Investigation Report at 15). The government also indicated that it would not oppose the application of the so-called "safety valve" provisions of the Sentencing Guidelines. *See* Presentence Hearing Tr. at 4. *See generally* U.S.S.G. § 2D1.1(b)(6) and § 5C1.2 (allowing reduction in offense level below the mandatory minimum sentence for offenders of 21 U.S.C. § 841 in the absence of certain aggravating characteristics). With application of the safety valve, Tucker was eligible for an additional two-point reduction in offense level, lowering the Guidelines range to 57–71 months' imprisonment. *See* Sentencing Hearing Tr. at 11 (Sept. 30, 2003); Tucker Br. at 3–4.

For the thirteen months prior to his sentencing, Tucker was released under the supervision of a pretrial monitoring program, which required that he undergo regular drug testing, abide by strict curfew provisions, and maintain contact with the supervising agency. During that time, he violated curfew eleven times and failed two drug tests. *See* Sentencing Report at 1–3 (Sept. 25, 2003). Tucker also, however, secured a full-time job at a warehouse — a job that allowed him to contribute to the support of his children. His employer took the time to write an "extraordinarily complimentary letter" praising Tucker as an employee and expressing his wish that Tucker remain able to work for him. Presentence Hearing Tr. at 2–3. Tucker also began attending computer repair courses in the hope of starting his own business. This record was sufficient for the pretrial services officer to recommend that Tucker be transferred from intensive supervision to work release pending his sentencing. Sentencing Report at 3.

At the July 18, 2003 presentence hearing, the district court acknowledged the drug testing failures and curfew violations, but noted Tucker's progress and observed that he had "com-

4

ported himself as a model citizen since his arrest." Presentence Hearing Tr. at 2. The sentencing judge expressed frustration that the Sentencing Guidelines left him "no choice but to send [Tucker] to prison for nearly five years," an outcome that he viewed as "counterproductive" for Tucker's rehabilitation, the community, and the criminal justice system. *Id.* at 3. Accordingly, the judge let the parties know that if Tucker were to maintain a clean record until his sentencing the following month, it was his "intention to grant a downward departure in his offense level sufficient . . . to place him on probation." *Id.* He advised the prosecutor "I think you better start preparing your appeal," for even though he was "fully cognizant of what the Court of Appeals in its wisdom may do" he was "not going to be the instrument of the injustice in this case." *Id.* at 4.

True to his word, on September 30, 2003, after acknowledging again that the "absolute minimum" sentence he could issue Tucker under the Guidelines was 57 months' imprisonment, *see* Sentencing Hearing Tr. at 3, the judge departed downward to sentence Tucker to five years' probation and a $100 special assessment fine. Although judges departing from the range prescribed by the Guidelines are required to explain their reasons for doing so "with specificity in the written order of judgment and commitment," 18 U.S.C. § 3553(c), the sentencing order simply referred to "U.S.S.G. § 5K2 and reasons set forth on the record at sentencing." Judgment and Commitment Order at 6.

Section 5K2 covers a wide range of grounds for departure, so we cannot say with certainty what the judge intended by referencing this broad section of the Guidelines. The transcript of the hearing, while not providing an explicit delineation of reasons for the downward departure, suggests five possible ones: (1) the fact that Tucker had not committed a criminal offense in the prior nine years; (2) the court's belief that the sentence required by the Guidelines was unjust; (3) Tucker's post-conviction rehabilitation; (4) Tucker's employment record; and (5) Tucker's family ties and responsibilities.

The government appeals the downward departure.

## II.

Our review of district court sentencing decisions is governed by 18 U.S.C. § 3742(e). We "accept the findings of fact of the district court unless they are clearly erroneous," *id.*, and review de novo pure questions of law — such as whether a factor is a permissible basis for departure under any circumstances. *See Koon v. United States*, 518 U.S. 81, 100 (1996). Until recently, we would review a district court's decision to depart under the Guidelines only for abuse of discretion. In 2003, however, Congress amended § 3742(e) by enacting § 401 of the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub. L. No. 108-21, 117 Stat. 650, 667–76 (Apr. 30, 2003). Pursuant to the PROTECT Act amendment, we review the district court's decision to depart from an applicable Guidelines range de novo. 18 U.S.C. § 3742(e); *United States v. Riley*, 376 F.3d 1160, 1164 (D.C. Cir. 2004). Although the conduct for which Tucker was convicted took place some ten months before the PROTECT Act became law, we apply this judicial review provision "with immediate effect, and without constitutional disability, to appellate proceedings after April 30, 2003." *Riley*, 376 F.3d at 1165.

## III.

To the extent the district court based the departure on its belief that the sentence was unjust, it relied on a factor that is clearly impermissible under the Guidelines. *See United States v. Webb*, 134 F.3d 403, 407 (D.C. Cir. 1998) ("The district court's disagreement with the policies embedded in the Sentencing Guidelines does not authorize it to depart.").

The same holds for the remoteness of Tucker's criminal history. It is true that Tucker had not been convicted of a criminal offense in nine years. Nevertheless, because Tucker was assigned to Criminal History Category I — the lowest possible level — the Guidelines have already accounted for that mitigating fact. *See* U.S.S.G. § 4A1.3 (policy statement) ("a departure below the lower limit of the guideline range for Criminal History Category I on the basis of adequacy of

criminal history cannot be appropriate"). The departure is thus invalid to the extent the district court based it on this factor. *See In re Sealed Case*, 292 F.3d 913, 916–17 (D.C. Cir. 2002).

The remaining factors the district court seemed to consider in electing to depart are legally permissible — in rare circumstances. The Sentencing Guidelines include post-conviction rehabilitation as a factor qualifying a defendant for a downward departure for acceptance of responsibility. *See* U.S.S.G. § 3E1.1, cmt. n.1(g) (considerations for an acceptance-of-responsibility departure include "post-offense rehabilitation efforts (*e.g.*, counseling or drug treatment)"). Tucker received the maximum decrease in offense level authorized by § 3E1.1. Although in most cases this reduction would be the maximum allowable, this circuit has left open the possibility for a further reduction on the "rare occasion" that the rehabilitation "is so extraordinary as to suggest its presence to a degree not adequately taken into consideration" by § 3E1.1. *United States v. Harrington*, 947 F.2d 956, 962 (D.C. Cir. 1991) (quoting *United States v. Sklar*, 920 F.2d 107, 116 (1st Cir. 1990)) (internal quotation marks omitted).

Similarly, departures based on employment history or family responsibilities are rare, but permitted. Both are discouraged factors for downward departures. *See* U.S.S.G. § 5H1.5 (policy statement) ("Employment record is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."); *id.* § 5H1.6 (policy statement) (same, with respect to family ties and responsibilities). As discouraged factors, neither may be a basis for a departure unless it is present "to an exceptional degree." *Koon*, 518 U.S. at 95–96. *Accord Riley*, 376 F.3d at 1170–71.

These are the legal standards for the permitted factors at issue, but we are unable to discern whether and how the district court applied this body of law to the case at hand. This is in large part because the district court neglected to give reasons for its departure "with specificity in the written order of judgment and commitment" as required by 18 U.S.C. § 3553(c). Although the district court noted in its sentencing

order that its departure was granted pursuant to "U.S.S.G. § 5K2 and reasons set forth on the record at sentencing," this explanation is insufficient. Prior to the PROTECT Act, the sentencing judge only had to state reasons for departure in open court. *See* 18 U.S.C. § 3553(c) (2000). The Act, however, amended § 3553(c) to add the requirement that the court explain reasons for departing in writing. *See* PROTECT Act, § 401(c), 117 Stat. at 669–70. Allowing the district court to satisfy this new requirement merely by referring to the sentencing hearing would render the 2003 amendment superfluous, and the district court's additional, vague reference to § 5K2 adds nothing.

Given this failure to comply with § 3553(c), the district court was silent on whether any or all three of the permitted factors were present to exceptional degrees in Tucker's case, and it has given just as little indication as to how it defines the respective "heartlands" against which an exceptional case is measured. *See* U.S.S.G. ch. 1, pt. A, cmt. 4(b) (The heartland is "a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted."). Thus, even though we are permitted to review the district court's decision to depart de novo, we have been presented with a record insufficient for that task.

## IV.

The government has requested that we vacate Tucker's sentence and remand the case to the district court with instructions to impose a sentence within the applicable Guidelines range. United States Br. at 43. It is true that after the PROTECT Act, the expanded scope of appellate review allows us to determine on the basis of the record whether a decision to depart from the Guidelines range is justified. Indeed, when we have been confident that the district court developed the record sufficiently and attempted to follow the Guidelines, *see Riley*, 376 F.3d at 1172–73, or attempted to

explain its departure at least in part in terms of the Guidelines, *see Webb*, 134 F.3d at 406, we have done just that.

That is not the case here. Although Tucker has gamely attempted to rationalize the district court decision in terms of the Guidelines, the district court was not attempting to apply the Guidelines in this case; it instead seemed intent on defying them — and 18 U.S.C. § 3553(c), to boot. De novo review is still review, and implies there has been *some* good faith effort by the district court to apply the Guidelines in the first place. That has not yet happened here. We decline to instruct the district court at this time whether a departure based on permitted factors is appropriate in Tucker's case. Instead, we vacate Tucker's sentence and remand for resentencing consistent with 18 U.S.C. § 3553(c) and the Sentencing Guidelines. So long as these Guidelines are the law of the land, we — and the district courts — are obligated to apply them.